It is Irizarry v. Yehia, number 21-1247. Counsel, you may proceed. Thank you, your honor, and may it please the court. My name is Andrew Tutt. I represent the plaintiff appellant Abadi Irizarry. I'd like to reserve two minutes for rebuttal, but if we go over that's okay. The court should reverse the decision below and hold that Mr. Irizarry was not barred by the doctrine of qualified immunity for two reasons. First, the right Mr. Irizarry was exercising, the First Amendment right to film police officers and the performance of their duties in a public place from a public street, was clearly established on the night of the events in this case. Tell us where your client was when he was filming. It's not in the complaint exactly, but he was standing, as I understand it, on the actual street. Was he in with where the police were doing a DUI check? They had pulled over a driver, as I understand it, on a budding street, and he was actually filming from a side street that was next to it. That's my understanding. So he was not in the way of any of the police activity? That's correct, Your Honor. The police were off to the side and pulled someone over off of a larger thoroughfare, and he was on a side street, sort of at a corner. That's my understanding of the record, and so he was not physically interfering with the stop at all and was, as I understand it, many feet away. This is outside the record, I want to say. It's not in the complaint. But I do want to return to the fact that as of May 2019, half of the federal regional circuits had already recognized in a published decision the constitutional right Mr. Irizarry sought to exercise. Those circuits cover 25 states and five territories and include more than 200 million people, representing 60 percent of the nation's population. This court should join those courts in recognizing and protecting a citizen's clearly established constitutional right to unobtrusively record a government official. Yes, Your Honor. Let me interrupt. You didn't brief this issue, right? You went right to clearly established. Well, Your Honor, we believe that the right exists and that it is clearly established. So we think the greater includes the lesser. We think it was clearly established on the night in question because as of that night, six circuits had held that this right exists. Would a police officer in Lakewood, Colorado be aware of what happened even on the other side of Denver? I hold the Lakewood Police Department to the same standards as all regional police officers, and I think that they would be able to look at what the state of the law was, look at the fact that half of the regional circuits had reached this conclusion, that spark phones are ubiquitous, that every person on the street could pull out their phone at any moment, and that they don't have the right to arrest those people. Could we just back up? Yes, Your Honor. It's really a follow-up to Judge Kueh's question. So as I understand it, the district court found that there was a constitutional violation. Yes, Your Honor. And then said not clearly established. Yes, Your Honor. And on appeal, is the first part of the district court's decision that there was a violation, is that contested? No, Your Honor. As I understand it, it is not contested that there is a First Amendment right. And that there was a First Amendment violation? That there was a First Amendment violation, yes. Or that the conduct was retaliatory and would constitute retaliation. So we, as we understand it, this case reduces to, at this point, the only contested issue, is should Officer Yahia have known that he was violating the First Amendment that night? All right. And I understand the counter-argument here is that we can't say it's clearly established because we've, this circuit has never squarely recognized the right in the first instance. Yes, Your Honor. Is that your understanding? This court, the argument seems to be, and the only argument seems to be, that because this court had not published a decision that said that there was a First Amendment right to record police explicitly, that a reasonable officer was entitled to rely on the absence of a published decision from this court. Well, why isn't that a good argument? Well, Your Honor, this court rejected that argument in O'Leary, a recent case, about this very question. The defendant in that case said that in the Westby case, the Supreme Court had left open the idea that a consensus of persuasive authority could be used to establish a clear right, clearly establish a right. But this court rejected that and said, no, because six courts of appeals have held that the right against sexual abuse by a guard has been established as an Eighth Amendment violation, it is clearly established law nationwide and therefore also in this circuit. And so the reason it's wrong is that the law has now become clearly established and was clearly established. Every reasonable officer would have known because it was six to zero and because even when this court, and I want to address this, even when this court in Frazier did not announce the right and said it wasn't clearly established, I think that was a very close question under the Supreme Court's case law. And five years later, looking at 2019, looking at 50% more regional circuits now having joined a consensus, no court of appeals in a published decision ever going the other way. Some of those courts saying it was obvious in light of controlling Supreme Court precedent. I think all of that on that side of the ledger put a reasonable officer on notice. But still, the Supreme Court has not ruled on this either, right? That's correct, Judge McHugh, but it has not, it is difficult to get a case in front of the court, the Supreme Court. The Supreme Court only grants 60 to 80 cases a year and so far the courts of appeals have been progressively recognizing the right. So waiting for the Supreme Court to come in and announce this nationwide is the only way for reasonable officers to be put on notice would be qualified immunity on steroids. It would be qualified immunity squared. It would, as the Olary Court said, significantly constrict the rights of citizens in a way that qualified immunity was not designed to protect. Reasonable officers- Don't we have- Yes, Your Honor. Don't we have to come out, come up with a reason why it's different now than it was when Fraser was decided? Because that case said, even looking at the rules of general application from the Supreme Court, that it couldn't say the right was clearly established as of 2014. Yes, Your Honor. So we've got to show a way to prove it. Yes. I think even if we bear that burden, we think we have it here because of the Turner v. Lieutenant Driver case in the Fifth Circuit and because of the Fields v. City of Philadelphia case in the Third Circuit, which came out after 2014. They said that the right wasn't clearly established in 2012 and 2013, but they said, going forward, this right is now established in the Third Circuit. This right is now established in the Fifth Circuit. And so we got 50 percent more regional circuits that considered the question carefully, looked at the constitutional doctrine of the Supreme Court, and reached the decision that it was a recognized right. And so two years later- Does it- Yes, Your Honor. Does it matter when those circuits said the right was clearly established, the timing of when the right was clearly established? It does, Your Honor. And I want to make clear, neither of those courts, neither the Third, as far as I know, nor the Fifth, has said that the right is clearly established. What they did was they said that going forward, starting in 2017, the right is now a right in the Third Circuit. The right is now a right in the Fifth Circuit. And so everyone takes that to mean that in those circuits it is now clearly established. Well, so if we made that same decision going forward, would it help your client at all? Absolutely, Your Honor. Yes. I would say, well, starting today, it's recognized, and this event happened earlier. Yes. Yes, Your Honor. It was recognized. Yes. And I see I'm running out of time, but I will tell you, yes, absolutely. My client regularly engages in filming the police. He thinks that his rights were violated and that it was clear in 2019. But he, of course, would just like this court to recognize the right if it thinks that it wasn't clear yet, that going forward, police officers can't do what Officer Gehia did in this case. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Natasha Babazadeh for the United States. To be clear, Your Honors, the government takes no position on the clearly established prong of qualified immunity. But if this court sides with plaintiffs and holds that there is a clearly established right, it would proceed to address the constitutional question. But even if this court holds that the defendant is entitled to qualified immunity, we urge this court to recognize that the First Amendment protects the rights of bystanders to record police officers in public. Since this court decided Frazier in 2021, there have been eight cases in this circuit, including this one, where district courts have issued opinions that implicate the First Amendment right to record. We cited to three of those cases in our brief. And since that time, there have been an additional four cases. So addressing this issue is timely and it would provide much needed clarity to the district courts. And it is also uncontroversial. As Plaintiffs' Counsel pointed out, there are six courts of appeals that have addressed this question and have recognized the right. I'm happy to answer any questions. Well, if we agree with Officer Yahia on prong two, that the law was not clearly established, why doesn't our decision in Frazier preclude us from addressing prong one? Because that's exactly what Frazier did. Yes, Your Honor. In Frazier, the court in a footnote declined to exercise discretion because there the parties did not dispute existence of the right. Here, the parties did dispute below existence of the right. That issue was litigated and the district court addressed that question and provided a very thorough analysis for recognizing the right. So all of that is preserved in the record and is before this court. In addition to that, Your Honor, the court in Frazier, in the footnote, declined to exercise its discretion because it stated that it, quote, did not want to glibly announce constitutional rules. Well, the court here would not be glibly announcing a constitutional rule when there is so much by way of authority here recognizing the right. Six courts of appeals have addressed this question. The Department of Justice, since 2012, at least 2012. We had a colloquy earlier about the fact that at least on appeal, the question of a constitutional right has been undisputed, that we really aren't having an argument about that. Would we be overstepping by just addressing that issue and saying there is a constitutional right? Well, Your Honor, no rational defendant, because of Frazier, would dispute existence of the right on appeal. Well, I'm asking, this is, I think this is more of just an appellate procedure question. If the issue isn't contested, why would we be addressing it in a fulsome way? Well, the Fifth Circuit in Turner and the Third Circuit in Fields, they both addressed the question, even though the parties didn't dispute existence of the right. And even though in both of those cases, the court granted qualified immunity to the defendant. So the court could address the question here. But also, Your Honor, the Supreme Court in Pearson provided guidance for when courts should recognize, or when courts should address the constitutional question. And it should do so when rights are implicated primarily in the qualified immunity context. As of the situation here, the majority of cases concerning the right to record arise in the qualified immunity context. And so there isn't any meaningful opportunity to really develop constitutional precedent regarding this issue outside of this context. Unlike, for example, the Fourth Amendment, where rights are constantly raised in criminal cases and courts in 1983 actions can rely on those criminal cases. I would like to leave some time for plaintiff for rebuttal. And then to conclude, Your Honor, the United States urges this court, if there is no further question, urges this court once and for all to recognize that the First Amendment protects the right of bystanders to report police officers performing their duties in public. Thank you.  My name is Alex Dorotik and I represent Lakewood Police Agent Ahmed Yehia. I'm going to begin by picking up on sort of a thread that was throughout the questioning of appellant's counsel, which is this idea that the establishment of the right somehow is precluded by whether or not there's an actual constitutional violation. And in this case, there is no establishment of the right within the Tenth Circuit, nor within the U.S. Supreme Court. And what about the Ulrey case that counsel mentioned? I'm not sure how that applies because in that case, I don't believe there was a question of the establishment of the right as to whether or not, and I was addressing specifically as an appellate procedure, whether or not the establishment of the right can exist when the constitutionality of the action is not being disputed. So my understanding of Valerie was that... Well, if you're not disputing that there was a constitutional violation here, didn't the right exist under that concession in 2019? Whether or not the right existed and whether or not it had been established as present within the circuit are two different questions. And whether or not the... Well, but counsel, if you're saying that there was a constitutional violation when this incident occurred in 2019, how can there be a violation unless there was a right? Well, I understand the question, Your Honor. Well, then what's the answer? Because it's a different inquiry. It's the inquiry isn't whether or not there was a violation. It's the inquiry is whether or not a reasonable police officer was on notice that his actions were a constitutional violation. Whether or not he, within... Okay, so now we're to prong two, and the appellate's relying on out-of-circuit cases. Yes. And in Ullary, this court said that we can rely on out-of-circuit cases to find clearly established law. So what's your response to Ullary? Well, my response to Ullary is that whether or not we can establish that it's clearly established law also doesn't get into whether or not the contours of that right have been clearly established. What we're talking about is a police officer on the street making a decision about the actions he's going to take. And not just whether there's a clear constitutional violation, but whether or not his specific actions represent a violation of the Constitution. Well, driving a car at the person who's trying to film the event? Well, again, taking the facts as it lies in the complaint. Yes. What the district court found was that those actions weren't alleged by the plaintiff as a constitutional violation. Not sure I followed that. What the district court said is, we're taking the plaintiff's allegations as he stated them. And what he stated is, I was obstructed from filming. I was unable to film due to this police officer's actions. And as a result, my constitutional rights were violated. Both in his complaint and in his briefing, he does not allege that these later actions, the allegation that he had a car driven toward him, created that constitutional violation. Did he allege the car being driven toward him in the complaint? He did. Well, then why can't that be considered? What the district court's ruling was, was that what I'm going to do is look at specifically what he alleged. And what he says, this is what caused my constitutional violation. This is what stopped me from being able to engage in what I'm describing as a constitutionally protected right. And I was unable to do that because of this officer's actions by standing in front of me and sharing a flashlight at me. You're parsing the complaint, but the complaint was pro se. It was. Don't we have to give the pro se complainant a little leeway on how he supplied the case? We certainly do. But there's a distinction between giving leeway and actually contradicting his own arguments. His own arguments both in his briefing and in his complaint say, this is what created my constitutional violation. I don't believe a district court has to go through the complaint and search out any potential cause of action. Now, one other point that I wanted to make in addressing this whole, the whole issue, is that what we're looking at from a 10,000-foot level is whether or not a reasonable officer is on notice that his actions will violate the Constitution. But yet we have such disparate groups as the First Amendment Scholars, the National Police Accountability Project, the United States of America, all urging this panel to establish the right. The sole reason the United States of America is here is urging this panel to establish the right. And what Plaintiff Appellate is saying... Well, the United States isn't taking a position on clearly established law. Does that mean we shouldn't recognize clearly established law? Maybe I'm misunderstanding the United States' position, but my understanding is the United States is urging this panel to... At least... To at least... Recognize the right. Right, to recognize the right. They are taking a position on clearly established law. Right. Counsel for Mr. Irizarry is asking us to recognize clearly established law. It's clearly before us. Right. But that's a step further. It's a step further than recognizing the right. It's really the only contested issue on appeal. I don't disagree with that. But... Excuse me. Let me ask you, as I understood your argument, and I want you to correct me if I'm wrong, is that even if we look at all these cases from other jurisdictions and we say they clearly established a right, your argument is the facts here are so different that they didn't establish a right that would clearly have put on notice a police officer that this behavior violated that right. And let me be more specific. The other cases, they have their recordings confiscated or they're arrested or the recordings are deleted, and here there's the shining of the flashlight and the driving the car and making noise. Am I understanding your argument correctly? Well, assuming in the arguendo that the right has been clearly established, that doesn't end the inquiry. I'm not conceding that the right has been clearly established, but that doesn't end the inquiry, because we still have to look into the contours of what these other cases do. We have to look at what an officer, understanding these out-of-jurisdiction cases, which creates an issue in and of itself, whether or not that officer would then know, okay, if I do this, I'm going to violate this person's constitutional rights. Now, we're talking about out-of-jurisdiction cases, and that's a step further than in-jurisdiction cases, which do then provide officers notice, yes, this is a constitutional violation. But as noted by Judge McHugh, those other out-of-jurisdiction cases involve arrests, involve detentions, none of which are alleged in this case because they did not happen. So, yes, there is a distinct factual difference between those out-of-jurisdiction cases and the case of Barr. So, going beyond that, I think what we're also identifying is what was articulated in White, which is that there has to be a case identified where an officer acting under similar circumstances was held to have violated a constitutional right. And going through Appellant's brief, there doesn't seem to be a case identified on point that shows those exact, or not those exact, but similar actions by an officer that would then tell Officer Yehia, you can't do this. You're violating someone's constitutional rights. Well, given that this was a 12-year-old... Well, let me. Excuse me. Go ahead, Judge. Go ahead. I'm sorry. Given that this was a 12-year-old... Well, I... Seniority. You go. Given that this is a 12-B-6 dismissal, shouldn't the court at least have permitted the complaint to be amended to be more specific if that's part of the problem? And what the district court found was that... They couldn't find anything on a 12-B-6. Perhaps, poor choice of words, Your Honor. I apologize. What the district court ruled was that any amendment would be futile because what this plaintiff is alleging is these actions, the standing in front and the shining of the flashlight, violated my constitutional rights. Well, they could have meant it to include speeding the car at him, couldn't they? Ed, what the district court was looking at was the specific four corners of the complaint and then the briefing by the plaintiff in saying, I'm basing my complaint on this. And so we're getting into that area between whether or not we have to liberally construe a pro se briefing or whether or not we can parse through and create sort of causative elements or causative action out of whole cloth. And in this particular instance, given the way the complaint was written and given the briefing as presented by plaintiff, we would be then searching through and finding any cause of action, not just liberally construing, but creating them out of whole cloth. All right. Now let me ask you my question, which is the allegation in the complaint that Officer Yeshia drove his car directly at these people. Doesn't that rise to the level of it being so egregious that any officer would know, kind of like the styling of Taylor cases? Obviously, a police officer knows you can't assault somebody with your vehicle. And I would concede that the question then becomes what is the alleged motivation for that right and is the motivation to create a constitutional deprivation, which then gets back as to whether or not Officer Yeshia was on notice that there was a constitutional right established in this jurisdiction to film police officers in their duties, whether or not there was proper notice from within this jurisdiction, whether or not that right had been clearly established at that point. Well, as I understand it, you conceded the right exists. I conceded the right exists, but what I haven't conceded is whether or not Officer Yeshia was on notice of that right, which is a distinctly different inquiry. And my question is, there are some cases where the conduct is so egregious that the Supreme Court has said we don't need clearly established law because everybody knows you can't assault or try to drive your car over someone who's exercising their First Amendment rights. Isn't that this case based on the allegations and the complaint? It is not. And again, the distinct difference is not the alleged egregiousness of the actions. It's the alleged motivation for the action and whether or not Agent Yeshia was on notice that there was a constitutional right to film police officers engaging in their duties and whether or not his actions, as alleged, were motivated by an intent to deprive Mr. Irizarry of those constitutional rights. So it's not that the actions are so egregious that it automatically gives rise to a cause of action. It's what the motivation for those actions are as alleged and whether or not Agent Yeshia, again, in looking at controlling precedent, knows whether or not a reasonable police officer is on notice that this is a protected constitutional right within this jurisdiction and he can't then take actions as a result of that. And if there are no further questions, I will cede the rest of my time. Could I just, I want to go back to this motivation point that you've been making. I mean, Officer Yeshia was called to the scene, wasn't he? At least as alleged in the complaint because of the filming that was going on. As alleged in the complaint, yes. Well, that's what we have to work with, right? Right. And I'm not disputing that. Okay. And why isn't it a fair inference, then, that running the car at Mr. Irizarry was motivated by the activity that Mr. Irizarry was engaged in? I would agree that that's a fair inference. However, what I would dispute is whether or not Agent Yeshia is on notice that what the activity that Mr. Irizarry was engaged in was constitutionally protected activity. Stated otherwise, in order for us to all be here to have a 1983 case, there has to be a constitutional violation, as we all know. And so, if Agent Yeshia is not on notice that he's violating Mr. Irizarry's constitutional rights, then there's no cause of action. It's not just… Okay, but I guess where I'm having a problem with this is that if we… If it's uncontested that there was a constitutional violation and the theory of the constitutional claim is retaliation, doesn't that mean that at least the motivation element of that claim has been established? Qualified immunity still requires that officers be put on notice. No, I understand the notice part, but the violation itself has the motivation element, and everyone right now, I think, has conceded that there was a violation. So there was motivation. And what you're saying is he has to know what his motivation was? Is that… What I'm saying is he has to be aware that his actions are constitutionally violated. It's not enough just to have motivation to do an action. You have to have motivation to violate a constitutional right. I understand your argument. Thank you. One more question. So if he were allowed to amend his complaint so that it was a violation of his bodily integrity when he drove the car at him, then he'd be fine with that? I'm not sure how to answer that. And the only reason I say that is that there was nothing alleged in the complaint that addressed any of those issues. There was nothing alleged in the complaint that indicated that Mr. Irizarry felt that that was a violation. And so we're pretty far afield from the complaint as it was originally alleged. Now, I don't want to speculate as to whether or not had he thought he suffered other injury, he might have had a proper cause of action. I'll just note that we're very far afield from what Mr. Irizarry's original cause of action are. Thank you. Thank you. Thank you, counsel. We appreciate the arguments. Was there any rebuttal time for this? Oh, I'm sorry. You have a minute 16. I'm glad I asked. Thank you, Your Honor. And I'll try not to go over. I really just want to point to the complaint, pages A10 and A11. The way it is pleaded is that Officer Irizarry, Officer Yahia comes to the scene, begins obstructing and harassing and intimidating the plaintiff and his companions. And then these are verbatim. Yahia then returned to his cruiser, sat back in it, threw it in drive, then drove right at the plaintiff and Mr. Brandt and sped away. Yahia then performed an illegal U-turn and gunned his cruiser directly at Mr. Brandt, swerved around him, stopped, then repeatedly began blasting his air horn at Mr. Irizarry and Mr. Brandt. Yahia was ultimately instructed to depart the scene due to his disruptive and uncontrolled behavior. On the next page, it says, Yahia's unprofessional, unlawful, and unreasonable conduct deprived the plaintiff of his rights to freedom of the press secured by the First Amendment of the United States Constitution. And that's because he pleads that he's actually a journalist. He's not just an ordinary citizen. That is enough to construe certainly a pro se complaint as alleging that all of the actions, not just coming and physically getting in front of Mr. Irizarry, not just shining his flashlight, but then speeding at him, gunning his cruiser and blasting his air horn, were all designed to prevent him from filming because he had to turn to address what was happening, but also instill significant fear. This is a deadly weapon. And I agree that driving a car right at someone is tantamount to pulling out a gun and pointing it directly at them. It should have been obvious to Officer Yahia that driving his cruiser at Mr. Irizarry violated his constitutional right to film the scene. I appreciate the time. We urge you to reverse. Thank you, counsel. We appreciate your arguments this morning. The case will be submitted and counsel are excused.